UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GILBERT O'NEIL                                                  CIVIL ACTION

VERSUS

MAJOR SHANNON LESSARD,
ET AL.                                              NO.: 16-00440-BAJ-RLB

RULING AND ORDER

Before the Court is the **Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss (Doc. 13)** filed by Sergeant Billy Verrett ("Sgt. Verrett"), and the **Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 16)** filed by Msgt. Eric Lane ("Msgt. Lane"), Sgt. Verret, Maj. Shannon Lessard ("Maj. Lessard"), and Lt. Jarod Verrett ("Lt. Verrett") (collectively "Defendants"). Gilbert O'Neil ("Plaintiff") filed responses to both motions. (Docs. 17, 20). Oral argument on the motions is not necessary. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

I.   BACKGROUND

Plaintiff is an inmate at Elayn Hunt Correctional Center ("EHCC") in St. Gabriel, Louisiana. (Doc. 1). Plaintiff alleges that on or about January 8, 2016, he was badly beaten by Defendants after being taken to the infirmary for X-rays. Specifically, Plaintiff alleges that an employee at EHCC initiated a physical altercation with Plaintiff. (Doc. 1 at ¶ 6). When Plaintiff fought back, the employee "took [Plaintiff] to the ground and handcuffed him." (*Id.* at ¶ 7). Plaintiff was eventually escorted to the infirmary to have X-rays taken of his shoulder and was thereafter placed in a holding cell. (*Id.* at ¶¶ 7-8). Plaintiff alleges that for the purpose

1

of punishing him, Plaintiff was escorted back to the X-ray room in full restraints and was "beat…down to the ground," kicked and punched by Maj. Lessard. (*Id.* at ¶ 11). Plaintiff asserts that Lt. Verrett and Msgt. Lane also entered the X-ray room, began punching and kicking Plaintiff, and "Major Lazard (sic) pulled [Plaintiff] by his shackles into [his] vomit" and further injured a preexisting ankle injury. (*Id.* at ¶¶ 12-13).

Plaintiff next alleges that he was carried to the Assessment Triage Unit of the prison, where an EMT placed bandages on his leg and prison officials prepared him for transport to a cell in "Beaver 2." (*Id.* at ¶¶ 15-18). During this time, Plaintiff asserts that Msgt. Lane and Lt. Verrett continued striking him until Plaintiff cried. (*Id.* at ¶ 16). Plaintiff claims that he sustained several injuries from the alleged beating and did not received medical care despite several requests for such. (*Id.* at ¶¶ 19-20). Based on these allegations, Plaintiff sued Defendants pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated due to Defendants' deliberate indifference to his serious medical needs and use of excessive force. (*See* Doc. 1).

## II. DISCUSSION

### A. MOTION TO DISMISS

Sgt. Verrett filed a motion to dismiss Plaintiff's claims against him, arguing, among other things, that Plaintiff failed to include in his Complaint any factual allegations implicating him.[1] (*See* Doc. 13). Plaintiff asserts that although he knows

---

[1] Sgt. Verrett also argued that he is entitled (1) to sovereign immunity to the extent Plaintiff seeks to recover money damages from him in his official capacity, and (2) to qualified immunity to shield him

there was a prison employee with the surname "Verrett" involved in the alleged incident, Plaintiff is unsure whether the person involved was Sgt. Billy Verrett or Lt. Jarod Verrett.[2] (Doc. 17). Because of this, Plaintiff requests that the Court allow some discovery before requiring him to name the correct member of the Verrett family involved in this incident. (*Id.*).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*,

---

from any attempt by Plaintiff to recover money damages from Sgt. Verrett in his individual capacity. (See Doc. 16). Plaintiff's Complaint does not specify whether he is bringing claims against Defendants in their official or individual capacities, but to the extent he does, it is axiomatic that any such request for monetary damages related to his § 1983 claim against Sgt. Verrett in his official capacity is barred by the Eleventh Amendment. *Painter v. Whitley*, 686 F. Supp. 150, 152 (E.D. La. 1988). Because Sgt. Verrett's qualified immunity defense is based on his argument that Plaintiff's Complaint does not mention him at all, the Court will pretermit discussion of the applicability of qualified immunity to Sgt. Verrett.

[2] Plaintiff claims that there are at least four members of the Verrett family who work at EHCC and, although Plaintiff believes that Lt. Verrett was involved in the alleged incident, Plaintiff also believes that the first name of the prison official involved is Billy. (*See* Doc. 17). Sgt. Billy Verret has a different rank within the prison than Lt. Jarod Verrett.

3

550 U.S. at 556). Hence, a complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555.

A review of Plaintiff's Complaint demonstrates that other than listing Sgt. Verrett as a defendant in this case, Plaintiff fails to specify any acts attributable to the basis of Plaintiff's lawsuit and for which Sgt. Verrett should remain in this lawsuit. As such, Plaintiff has failed to satisfy federal pleading standards and the Court must dismiss Plaintiff's claims against Sgt. Verrett. Accordingly, Sgt. Verrett's Motion to Dismiss (Doc. 16) is **GRANTED**.

## B. MOTION FOR SUMMARY JUDGMENT

In their motion for summary judgment, Defendants argue that Plaintiff's deliberate medical indifference claim should be dismissed for Plaintiff's failure to exhaust administrative remedies before filing his lawsuit. Specifically, Defendants argue that Plaintiff failed to complete grievance procedures for ARP No. EHCC-2016-0077 ("ARP No. 77") and ARP No. EHCC-2016-0136 ("ARP No. 136"), which address Defendants' alleged failure to provide constitutionally adequate medical care. (Doc. 16).

### 1. Standard of Review

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In determining whether the movant is entitled to summary judgment, the court

views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the non-movant "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal citations omitted). At this stage, the court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991), *cert. denied*, 502 U.S. 1059 (1992). However, if "the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor," the motion for summary judgment must be denied. *Id.* at 1263.

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (internal quotations omitted). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine dispute as to any material fact,

5

and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

### 2. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") prohibits actions under Section 1983 by inmates until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the exhaustion requirement is to give an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and to encourage the efficient resolution of claims. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Accordingly, the United States Court of Appeals for the Fifth Circuit has emphasized that under Section 1997e(a), a prisoner must exhaust administrative remedies before filing a § 1983 suit and is precluded from filing suit while the administrative complaint is pending. *Clifford v. Gibbs*, 298 F.3d 328 (5th Cir. 2002). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford*, 548 U.S. at 90. Further, mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

In Louisiana, an inmate must follow a two-step Administrative Remedy Procedure ("ARP") process to exhaust administrative remedies before filing a lawsuit in federal court. La. Admin. Code, Title 22, pt. I, § 325 (2013). An inmate initiates the ARP process by completing a request for administrative remedy or writing a letter to

the warden, clearly indicating that the submission is a "request for administrative remedy" or "ARP." *Id.* at § 325(G)(1)(a)(i)-(ii). An ARP screening officer screens the inmate's request and either accepts the request into the first step or rejects it for one of ten enumerated reasons. *Id.* at § 325(I)(1)(a)(i)-(ii). Once the request is accepted, the warden must respond on a first step response form within forty (40) days of receipt of the request. *Id.* at § 325(J)(1)(a)(ii). If the inmate is not satisfied with the response, he may proceed to the second step of the ARP process by appealing to the Secretary of the Department of Corrections ("DOC Secretary") using a space provided on the first step response form. *Id.* at § 325(J)(1)(b)(i)-(ii). The DOC Secretary is required to issue a response within forty-five (45) days from the date the request is received utilizing a second step response form. *Id.* at § 325(J)(1)(b)(ii). The expiration of any response time limits entitle the inmate to move to the next step in the process. *Id.* at § 325(J)(1)(c).

### 3. ARP No. 77

Plaintiff submitted his first written request for administrative remedy regarding his medical needs on January 28, 2016, alleging that beginning on January 8, 2016, he sought medical care for injuries sustained during the previously described altercation with prison personnel but was denied relief. (*See* Doc. 16-3 at p. 29). The request was received by an ARP screening officer on February 2, 2016, but its processing was stayed pending review of a previously accepted request for administrative review submitted by Plaintiff.[3] (*See* Doc. 16-3 at p. 28). The Warden

---

[3] La. Admin. Code tit. 22, § 325(F)(3)(a)(ix) provides: "If an offender submits multiple requests during the review of a previous request, they will be logged and set aside for handling at such time as the

accepted ARP No. 77 on October 4, 2016, approximately three months after Plaintiff filed a lawsuit based on complaints contained in ARP No. 77. (Doc. 16-3 at p. 30). Given the evidence in the record and Plaintiff's failure to demonstrate a genuine dispute of material fact, Defendants have satisfied their burden of proving that Plaintiff failed to exhaust administrative remedies for allegations contained in ARP No. 77 prior to filing suit.

Plaintiff counters that because administrative review of ARP No. 74 concluded on May 17, 2016, ARP No. 77 came off of backlog that same day. Consequently, Plaintiff avers that because prison personnel allowed 90 days to elapse between the time processing of ARP No. 77 commenced and final resolution of the complaint, exhaustion of ARP No. 77 occurred in August of 2016. (Doc. 20 at pp. 5-6).

First, this argument grossly misinterprets the law on this matter. This Court has previously explained that although Louisiana's grievance procedure provides a 90-day outside time limit to complete the administrative review process, there are several internal time limitations imposed by the procedure that bind prisoners seeking administrative relief. *See Kleinpeter v. Kilbourne*, 2015 WL 7568656 (M.D. La. Nov. 24, 2015). As stated above, prison officials must respond to an inmate's written grievance at the first step within 40 days from the day it was received. La. Admin. Code tit. 22, § 325(J)(1)(a)(ii). After prison officials failed to respond to

---

request currently in the system has been exhausted at the second step...". At the time Plaintiff submitted ARP No. 77, ARP No. EHCC-2016-74 ("ARP No. 74") concerning Plaintiff's excessive force claim was already under administrative review. (*See* Doc. 16-3 at p. 28). Second Step Review of ARP No. 74 concluded on May 17, 2016. (Doc. 20-5).

Plaintiff's written request when it came off of backlog, Plaintiff was entitled under § 325(J)(1)(c) to "move on to the next step in the process"—that is, to proceed to the second step. The regulations do not allow Plaintiff to skip the second step entirely and file suit. Rather, Plaintiff was required to proceed to the second step with an appeal to the DOC Secretary. However, Plaintiff chose not to take the next step in the process. As such, Defendants' affirmative defense of exhaustion holds.

Second, even accepting as true Plaintiff's interpretation of the law and finding that he was entitled to file suit 90 days from the date the ARP was no longer backlogged, ARP No. 77 would not have been exhausted until August 17, 2016, almost two months *after* Plaintiff filed this lawsuit.[4] As such, Plaintiff would have filed suit while administrative review of ARP No. 77 was pending, which the law does not allow. *See Clifford*, 298 F.3d at 332.

### 4. ARP No. 136

Plaintiff submitted his second written request for administrative remedy regarding his medical needs on February 11, 2016. (Doc. 16-3 at p. 4). The request was received by an ARP screening officer on or about February 15, 2016, but was backlogged for the same reason as ARP No. 77. ARP No. 136 came off of backlog on May 17, 2016, and was accepted on May 23, 2016. (Doc. 16-3 at p. 3). First step denial occurred on June 15, 2016, and Plaintiff appealed the denial to the DOC Secretary on June 21, 2016. (Doc. 16-3 at pp. 5-6). Plaintiff's appeal was received on July 4, 2016, and Plaintiff's request was denied on September 13, 2016. (Doc. 16-3 at p. 10). The

---

[4] Plaintiff seems to make this concession in his response to Defendants' motion for summary judgment. (Doc. 20 at p. 6).

9

documentation contained in the record clearly demonstrates that review of ARP No. 136 had not concluded prior to Plaintiff filing suit on June 29, 2016, nor does Plaintiff provide competent evidence to counter Defendant's assertions.

Plaintiff argues, however, that "according to one set of documents produced by EHCC ARP 136 was exhausted prior to the filing of this lawsuit" while "according to yet another set of documents…ARP 136 was not exhausted." (Doc. 20 at p. 7). In support of the assertion that ARP No. 136 was exhausted, Plaintiff points to a summary of ARP No. 136's review process and argues that it lists June 15, 2016 as the date of exhaustion. (*Id.*). However, the summary clearly identifies June 15, 2016 as the date that the first step of the administrative review process was completed, and September 13, 2016 as the date that the second step was completed, or as the date of exhaustion. Because the instant action was filed approximately two-and-a-half months prior to ARP No. 136's exhaustion, and because Plaintiff failed to demonstrate through competent evidence the existence of a genuine dispute of material fact, the Court finds that summary judgment in favor of Defendants is appropriate.

### III. CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that the **Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss (Doc. 13)** filed by Sergeant Billy Verrett is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims of Gilbert O'Neil against Sgt. Billy Verrett are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 16)** filed by Msgt. Eric Lane, Sgt. Billy Verret, Maj. Shannon Lessard, and Lt. Jarod Verrett is **GRANTED**.

**IT IS FURTHER ORDERED** that Gilbert O'Neil's deliberate medical indifference claims against Defendants are **DISMISSED WITHOUT PREJUDICE** as Plaintiff failed to exhaust administrative remedies prior to filing suit.

Baton Rouge, Louisiana, this 20th day of July, 2017.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**